UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARC KUTTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV345 CDP |
| ) | |
| SUN LIFE ASSURANCE COMPANY ) | |
| OF CANADA, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

Plaintiff Marc Kutten brings this Employee Retirement Income Security Act (ERISA) action to recover benefits allegedly due under his employee welfare benefit plan. Kutten, suffering from retinitis pigmentosa, applied for long term disability benefits under his plan with defendant Sun Life Assurance Company of Canada. Sun Life ultimately approved Kutten's claim but found that the preexisting condition provision limited Kutten's benefits to the lesser amount allowed under a previous plan because Kutten's taking vitamin supplements meant that he had been receiving "medical treatment" for his condition. Both parties have moved for summary judgment. Because the administrator's interpretation of the plan was unreasonable, I will grant Kutten's motion for summary judgment and deny Sun Life's motion.

## Background

Marc Kutten was the co-owner of Property Solutions Group LLC (PSG), which before June 2010, had an employee welfare benefit plan with Aetna. Kutten

was covered as a participant under the plan. The Aetna plan offered a maximum gross benefit of $1,000 per month. On June 1, 2010, PSG purchased a new policy from Sun Life and increased the maximum gross monthly benefit to $6,000 per month. That policy limited coverage for disabilities caused by a pre-existing condition, but not all medical conditions that existed before the policy's issuance meet the policy's specific definition:

> **Pre-Existing Condition** means during the 3 months prior to the Employee's Effective Date of Insurance the Employee received medical treatment, care or services, including diagnostic measures, or took prescribed drugs or medicines for the disabling condition.

Adm. Rec. 40.  The plan provided:

> Any benefit payable will be determined as follows:
> 1. if an Employee satisfies the Pre-Existing Condition Exception under this Policy, the LTD benefit will be determined according to this Policy's benefit provision.
> 2. if an Employee cannot satisfy the Policy's Pre-Existing Condition Exception under this Policy, the prior insurer's pre-existing condition provision will be applied.
>    a. if the Employee would satisfy the prior insurer's pre-existing condition provision, giving consideration for continuous time insured under both policies, any benefit payable will be the lesser of:
>       i. the LTD benefit payable under this Policy; or
>       ii. the LTD benefit payable under the prior insurer's group LTD policy had it remained in force.
>    b. if the Employee cannot satisfy the Pre-Existing Condition Exception of this Policy or if the pre-existing condition provision under the prior insurer's group LTD policy would apply, no LTD benefit will be paid.

Adm. Rec. 41.

Marc Kutten has suffered from a progressive eye condition, retinitis pigmentosa, for nearly twenty years. Since at least 2000, Kutten has taken 15,000 units a day of a non-prescribed, over-the-counter Vitamin A supplement.[1] He took the supplement at his doctor's recommendation. Kutten did not visit any doctor or medical facilities for the three months before the effective date of the Sun Life policy.

On September 21, 2010, Kutten stopped working because of his eye condition. On October 6, 2010, he applied for long term disability benefits under his new policy with Sun Life, listing September 21 as the date of disability. Sun Life initially determined that Kutten did not meet the definition of "Totally Disabled" under the policy and denied his application. Kutten requested a review of the denial, and on review, Sun Life determined that Kutten was "Totally Disabled," but that his Vitamin A treatment constituted "medical treatment" for purposes of the Pre-Existing Condition provision in the new policy.

As evidence for its decision, Sun Life cited a letter from Kutten's ophthalmologist, Dr. Mark Spurrier. Adm. Rec. 1123-30. Dr. Spurrier stated that he had recommended supplementary vitamin A palmitate, 15,000 units daily; that the recommendations were published by the National Eye Institute (NEI); that the

---

[1] In his response to Sun Life's statement of uncontested material facts, Kutten disputes that he was in fact taking vitamin A since 2000, arguing that the evidence shows it was merely recommended. Regardless of whether this constitutes a genuine dispute, it is not material since I conclude that the vitamin A supplement does not constitute a medical treatment.

treatment, while not a cure for retinitis pigmentosa, may slow its rate of progression; and that Kutten repeatedly verified to Dr. Spurrier that he was compliant with the vitamin therapy. Sun Life put particular emphasis on Dr. Spurrier's referring to the vitamin A supplement as "therapy." Sun Life further relied on the opinion of Dr. Clifford Michaelson, an ophthalmologist who reviewed the case. Dr. Michaelson cited the same NEI study, noted that vitamin A supplementation may be toxic, produces unpredictable results, and in his estimation, should be considered a "medical treatment."

Finally, Sun Life cited a press release by the NEI entitled "Treatment for Retinitis Pigmentosa Reported." The press release, dated June 14, 1993, recommended the daily dosage of 15,000 units of a vitamin A supplement as a "treatment" for the disease. It also contained a recommendation of Dr. Eliot Berson, the principal investigator of the vitamin A study, stating that the supplementation should be taken in consultation with an eye care professional.

Because Sun Life determined that the eye condition was a pre-existing condition under the policy definition, it determined that Kutten's maximum LTD benefit was $1000, the amount that would have been payable under the previous policy. Kutten then filed this action contesting the determination that his Vitamin A supplement constitutes "medical treatment." Both parties have moved for summary judgment.

## Discussion

Summary judgment is appropriate only if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this case, Kutten bears the burden of establishing that he was entitled to the benefits under the terms of his plan. *See Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992).

Under ERISA, a plan beneficiary has the right to judicial review of a benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). Here, it is undisputed that the plan grants discretionary authority to Sun Life to make all final determinations regarding claims for benefits including determination of eligibility for benefits, the amount of benefits due, and to construe the terms of the policy. *See* Adm. Rec. 49. Where an ERISA plan grants the administrator such discretion, courts must apply a deferential abuse-of-discretion standard of review. *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1050 (8th Cir. 2011).

Under the abuse-of-discretion standard, the court asks whether the administrator's interpretation of the plan was reasonable. *Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 794 (8th Cir. 2002). An administrator's decision will be considered reasonable if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would*

have reached that decision." *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002) (emphasis in original).  The Eighth Circuit has identified the following factors to be considered in the analysis:   (1) whether their interpretation is consistent with the goals of the Plan; (2) whether their interpretation renders any language of the Plan meaningless or internally inconsistent; (3) whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether they have interpreted the words at issue consistently; and (5) whether their interpretation is contrary to the clear language of the Plan.  *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (citing *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)).   The Eighth Circuit has emphasized that while the *Finley* factors inform the court's analysis, "the dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own."  *Id.*   (internal quotation marks and citation omitted).

Three of the *Finley* factors militate in favor of affirming Sun Life's decision. Nothing in the record indicates that the defendant's decision was inconsistent with the goals of the plan.   The decision to deny benefits has not been shown to violate ERISA.   No record of inconsistent applications of the plan language has been shown.

However, Sun Life's interpretation renders some language of the plan meaningless or internally inconsistent, and is contrary to the clear language of the plan. The plan defined a pre-existing condition as follows:

> **Pre-Existing Condition** means during the 3 months prior to the Employee's Effective Date of Insurance the Employee received medical treatment, care or services, including diagnostic measures, or took prescribed drugs or medicines for the disabling condition.

Sun Life determined that Kutten's use of the vitamin A supplement constituted "medical treatment."

Sun Life did not conclude that the supplement fell within the "or took prescribed drugs or medicines for the disabling condition" portion of the definition, and Kutten argues that Sun Life's interpretation that it is medical treatment is inconsistent with this language. The use of the word "or" makes clear that the plan does not include prescribed drugs or medicines under the umbrella of "medical treatment." This is made even clearer by the fact that the provision *did* use inclusive language when describing "diagnostic measures," and therefore could have used the same inclusive language for prescribed drugs or medicines. Accordingly, taking "prescribed drugs or medicines" is a separate reason to find a pre-existing condition from "medical treatment" under the plan.

This distinction is crucial to Kutten's case, and I agree that Sun Life's interpretation is inconsistent with the policy language. Prescribed drugs or

- 7 -

medicines generally require that a person have interacted with a medical professional, at least when the initial prescription is given.   Vitamin supplements, however, require no such medical intervention.   A doctor recommending a person take vitamin A for retinitis pigmentosa is more akin to a doctor suggesting someone with digestive issues eat apples because they are high in fiber than it is like receiving a prescribed drug.   Yet even prescribed medications aren't considered "medical treatment" under the plan, as shown by the disjunctive language discussed above.   If prescribed medication is not considered medical treatment, it would be internally inconsistent to say that vitamin supplements—which require even less medical intervention—would constitute "medical treatment."

## Conclusion

Sun Life's determination that Kutten's vitamin A supplements constituted medical treatment was unreasonable, and Kutten is entitled to the full amount of benefits available under the plan.   However, the complaint seeks relief other than just a judgment that Kutten is entitled to benefits.   The complaint also asks for prejudgment interest and other relief.   It is therefore unclear to me whether my ruling on these summary judgment motions completely resolves plaintiff's claims.   I will not enter judgment at this time,

but will order the parties to advise me regarding whether this order resolves all issues in the case.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#14] is denied.

**IT IS FURTHER ORDERED** that plaintiff's cross motion for summary judgment [#18] is granted.

**IT IS FURTHER ORDERED** that the parties shall meet and confer, and no later than **June 24, 2013**, shall file a joint status report telling me whether there are other issues needing resolution or whether this case is ready for entry of judgment. If other issues remain, the status report shall describe what the issues are, and shall propose a schedule for all steps remaining to resolve those issues.

                                              _____
                                              CATHERINE D. PERRY
                                              UNITED STATES DISTRICT JUDGE

Dated this 6th day of June, 2013.